

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00530-CV

_____

IN THE MATTER OF T.J.

_____

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-118714-22

_____

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant T.J. appeals the juvenile court's decision to transfer him to the Institutional Division of the Texas Department of Criminal Justice to complete his 10-year sentence for capital murder. *See* Tex. Fam. Code Ann. § 54.04(d)(3)(A)(i). T.J. contends in his sole point that insufficient evidence supports the juvenile court's ruling. We disagree and affirm the juvenile court's transfer order.

## I. Legal Principles and Standard of Review

The Juvenile Justice Department (TJJD or Juvenile Department) may refer a youth to the juvenile court for transfer to the Department of Criminal Justice (Criminal Department) if the youth is between 16 and 19 years old, is serving a determinate sentence, and has not completed his sentence and if the youth's conduct "indicates that the welfare of the community requires the transfer." Tex. Hum. Res. Code Ann. § 244.014(a). Upon such referral, the juvenile court must conduct a hearing, Tex. Fam. Code Ann. § 54.11(a), and after the hearing, the juvenile court must either (1) order him returned to the Juvenile Department or (2) transfer him to the Criminal Department to complete his sentence, *see id.* § 54.11(i); *In re K.J.*, No. 02-23-00189-CV, 2023 WL 6889969, at *2 (Tex. App.—Fort Worth Oct. 19, 2023, pet. denied) (mem. op.).

When deciding whether to transfer a youth to the Criminal Department, the juvenile court may consider several factors, including

2

- the experiences and character of the person before and after commitment to the [Juvenile Department];

- the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed;

- the abilities of the person to contribute to society;

- the protection of the victim of the offense or any member of the victim's family;

- the recommendations of the youth commission and the prosecuting attorney;

- the best interests of the person; and

- any other factor relevant to the issue to be decided.

Tex. Fam. Code Ann. § 54.11(k). The State is not required to present evidence of each factor, and the juvenile court is not required to consider all the listed factors and may assign different weights to those factors that it does consider. *In re A.I.G.*, 711 S.W.3d 270, 276 (Tex. App.—Houston [14th Dist.] 2024, no pet.).

We review a juvenile court's decision to transfer a child to the Criminal Department for an abuse of discretion. *See id.* Generally, a court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Id.* When deciding whether an abuse of discretion occurred, appellate courts review the entire record to determine if the juvenile court acted without reference to any guiding rules or principles. *Id.* If some evidence supports the juvenile court's decision, it has not abused its discretion. *Id.*; *see Sherman v.*

3

*Sherman*, 650 S.W.3d 897, 899 (Tex. App.—Fort Worth 2022, no pet.) (noting that no abuse of discretion occurs if some substantive and probative evidence supports the trial court's decision or if reasonable minds could differ as to the result). Stated differently, a trial court abuses its discretion when it acts arbitrarily or unreasonably or when it rules based on factual assertions not supported by the record. *A.I.G.*, 711 S.W.3d at 276–77. The juvenile court—as the factfinder at the transfer hearing—is the sole judge of witness credibility and may choose to believe or disbelieve all or only portions of a witness's testimony. *In re J.A.G.*, 697 S.W.3d 386, 393 (Tex. App.—El Paso 2024, no pet.).

Because a ruling must be supported by the record, the sufficiency of the evidence is a component of an abuse-of-discretion review. *See In re J.H.*, 698 S.W.3d 101, 105 (Tex. App.—Houston [14th Dist.] 2024, no pet.). When considering a legal sufficiency challenge, we review the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it. *Id.* at 106.

## II. Discussion

We first address—independently of T.J.'s arguments—why the juvenile court did not abuse its discretion by transferring T.J. to the Criminal Department. We then address T.J.'s sufficiency complaints and explain why they have no merit.

### A. No Abuse of Discretion

When the transfer hearing began, the juvenile court took judicial notice that it had previously found that T.J. had engaged in delinquent conduct by committing the

4

offense of capital murder. In T.J.'s confession, he admitted to shooting and killing a man in the course of committing or attempting to commit a robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2). The nature of the underlying offense is one of the factors listed in the Texas Family Code that the juvenile court can consider, *see* Tex. Fam. Code Ann. § 54.11(k), and this offense was serious. If convicted as an adult, the punishment is death or life imprisonment without parole. *See* Tex. Penal Code Ann. § 12.31(a).

The manner of committing the offense is another factor listed in the Texas Family Code that the juvenile court can consider. *See* Tex. Fam. Code Ann. § 54.11(k). At the hearing, the State called as its only witness the Gainesville State School Juvenile Department's clinical director, Daniel Krall. Through Krall, the State introduced into evidence a "master file," consisting of over 1,000 pages.[1] And the master file outlined the manner in which the underlying offense was committed.

According to the information contained within the file, T.J. agreed to sell a gun to the victim; the victim made a partial payment before meeting T.J.; and when the victim drove up to make the final exchange, T.J. shot the victim multiple times and killed him. T.J. then took the victim's money. T.J. was thus convicted of capital murder based on his own conduct and not on the conduct of another for whom he was criminally responsible. *See* Tex. Penal Code Ann. § 7.01 ("Parties to Offenses").

---

[1]The file also contained a seven-page summary that provided the Juvenile Department's recommendation and the reasons for it.

The director's recommendation is also a relevant consideration. *See* Tex. Fam. Code Ann. § 54.11(k). On direct examination, after admitting the master file, the State asked Krall for the Juvenile Department's recommendation, and Krall responded, "The recommendation of the agency is that [T.J.] should be transferred to the . . . Criminal [Department]."

In explaining the basis of his recommendation, Krall testified that T.J. had not yet completed the Serious Violent Offender Treatment Program[2] and that T.J. would not be able to complete it before his nineteenth birthday. Krall further explained that several behavioral incidents by T.J. had caused him to be transferred to the Evins Facility, a facility that did not offer the Serious Violent Offender Treatment Program. According to the file summary, after completing the Redirect Program[3] at the Evins Facility, T.J. was sent to the Giddings State School but then returned to the Evins Facility to complete the Redirect Program for a second time. After the second completion, T.J. was sent to the Gainesville State School where he remained until the transfer hearing.

---

[2]The Juvenile Department's recommendation summary describes the program as follows: "The [Serious Violent Offender Treatment Program] treats youth who are committed to TJJD for crimes such as capital murder, murder[,] and other offenses involving the use of a weapon or deadly force."

[3]The Juvenile Department's recommendation summary defined the Redirect Program as "a security program designed to deliver intensive behavior management interventions in a structured environment for youth who have engaged in certain serious rule violations."

T.J.'s conduct after his commitment to the Juvenile Department is also a relevant factor for the juvenile court to consider. *See id.* And the recommendation summary stated that T.J.'s own conduct prevented him from completing the Serious Violent Offender Treatment Program: "[T.J.] has been unable to enroll and participate [in] this program due to his behavior and placement in the [Redirect and Intensive Intervention Program]."

The welfare of the community was another proper factor, *see* Tex. Hum. Res. Code Ann. § 244.014(a), and the Juvenile Department's recommendation summary reported that T.J. posed a danger to other juveniles: "[T.J.'s] behavior and refusal to respond to intervention suggest that he is both a disruption and a danger to other youth while in TJJD."

The prosecutor's recommendation was a relevant consideration as well. *See* Tex. Fam. Code Ann. § 54.11(k). During final arguments, the State recommended that the juvenile court follow Krall's recommendation and transfer T.J. to the Criminal Department.

On appeal, T.J. argues—and correctly so—that at the transfer hearing, his counsel presented evidence and arguments favorable to him. But as the factfinder, the juvenile court could have given this favorable evidence little or no weight and could have given considerable weight to the ample unfavorable evidence outlined above. *See J.A.G.*, 697 S.W.3d at 393. Because the presence of unfavorable evidence

7

supports the juvenile court's ruling, we hold that the juvenile court did not abuse its discretion.  *See A.I.G.*, 711 S.W.3d at 276.

## B.  T.J.'s Sufficiency Complaints

We now address T.J.'s two sufficiency complaints.

First, he argues that although Krall testified during the hearing and gave his recommendation, his recommendation was conclusory.  Specifically, T.J. argues that nothing in Krall's testimony explained how he had arrived at his recommendation and that his recommendation carries no evidentiary weight.  *See Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010) (stating that if no basis for an opinion is offered, the opinion is merely a conclusory statement and cannot be considered probative evidence).

Second, T.J. maintains that the juvenile court could not have reviewed the entire 1,000-page master file after its admission and before the juvenile court's ruling and that the ruling could not have been based on the master file. And, to further support that argument, T.J. contends that the juvenile court was not authorized to review the master file before the hearing.

### 1.  Conclusory testimony

As to T.J.'s contention that Krall's testimony was conclusory, T.J. points out that when the State questioned Krall on direct, the State asked him for his recommendation, Krall gave it, and then the State passed the witness.  But T.J. fails to acknowledge that Krall's testimony did not end there.  The record shows that not only did T.J.'s attorney cross-examine Krall at length about the basis of his opinion but

also that the juvenile court judge questioned Krall about his recommendation. Thus, Krall's testimony was not limited to a bare, conclusory recommendation, as T.J. contends.

Additionally, Krall indicated that he had reviewed the master file, and the master file was admitted into evidence along with its 1,000-plus pages pertaining to T.J. and his commitment and its seven-page summary explaining the Juvenile Department's recommendation. Krall's recommendation was, therefore, not conclusory or without any explanation. Both Krall's testimony and the master file provided evidentiary support and an explanation for Krall's recommendation.

We reject T.J.'s first argument that Krall's recommendation was conclusory and lacked evidentiary support or explanation. *See J.H.*, 698 S.W.3d at 105.

### 2. Juvenile Court's Review of the Master File

T.J. argues that the juvenile court did not have sufficient time to review the master file before making its ruling and that nothing authorized the juvenile court to review the master file before the hearing. Therefore, T.J. concludes that the master file could not have provided any evidentiary support for the juvenile court's ruling. We disagree.

The Texas Family Code anticipates that the juvenile court—not the State—will provide all the written materials that the court will consider at the transfer hearing to the youth's attorney on or before the fifth day before the hearing. Tex. Fam. Code

Ann. § 54.11(d).[4]  Thus, the Texas Family Code contemplates that the juvenile court will know in advance what documentary evidence it will rely upon at the hearing.[5] And nothing in Section 54.11(d) precludes the juvenile court from reviewing such documentary evidence in advance of the hearing.  *See id.*  We reject T.J.'s suggestion that the statute's silence on the matter would dictate that a juvenile court is prohibited from preparing for an upcoming hearing by reviewing a report that it has identified as written matter it will consider at the hearing.

Consistent with this construction, the record indicates that the juvenile court did review the master file in advance of the hearing.  The juvenile court's familiarity with the contents of the master file at the hearing was demonstrated when the juvenile

---

[4]Section 54.11(d) provides,

> At a hearing under this section the court may consider written reports and supporting documents from probation officers, professional court employees, guardians ad litem appointed under Section 51.11(d), professional consultants, employees of the [TJJD], or employees of a post-adjudication secure correctional facility in addition to the testimony of witnesses.  On or before the fifth day before the date of the hearing, *the court* shall provide the attorney for the person to be transferred or released under supervision with access to all written matter to be considered by the court.  All written matter is admissible in evidence at the hearing.

*Id.* (emphasis added).

[5]The record shows that the master file was sent to the juvenile court on November 7, 2024, and, although not entirely clear, indicates that the recommendation summary was sent on November 13, 2024.  At the outset of the transfer hearing on November 20, 2024, the juvenile court took judicial notice of its file "and all of its contents."

10

court drew on information solely contained within the master file to question Krall about his opinion. For example, the juvenile court asked about an incident in which T.J. had threatened another youth's mother over the telephone.[6] And the juvenile court also asked about other incident reports contained within the master file, including allegations of inappropriate touching of staff members and possession of prohibited items. By making such inquiries, the juvenile court demonstrated that it had reviewed the master file and that its decision was based, at least in part, on its contents.

We reject T.J.'s second argument that the juvenile court was prohibited from reviewing the master file prior to the hearing and had failed to review it prior to ruling. *See id.*; *J.H.*, 698 S.W.3d at 105.

### III. Conclusion

Having rejected each of T.J.'s arguments, we overrule T.J.'s sole sufficiency point and affirm the juvenile court's order transferring him to the Criminal Department.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: July 3, 2025

---

[6]Krall responded that the incident had resulted in an extortion finding and to T.J.'s return to the Evins Facility.

11